**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOE HAND PROMOTIONS, INC.,** : | |
| Plaintiff, : | |
| v. : | **Civil No. 12-CV-1242** |
| **FREDERICK J. BECCHETTI,** : | **(JUDGE MANNION)** |
| **LORRAINE BECCHETTI, and** | |
| **FJB3 INCORPORATED,** : | |
| Defendants. : | |

## MEMORANDUM

Pending before the court is a motion for default judgment, (Doc. No. 11), filed by plaintiff Joe Hand Promotions against defendants Frederick J. Becchetti, Lorraine Becchetti, and FJB3 Incorporated. Plaintiff requests that the court enter judgment in the amount of $111,100,[1] $1,000 of which is to compensate plaintiff for defendants' alleged conversion of its property and $110,000 of which constitutes the maximum statutory and enhanced damages allowed under 47 U.S.C. §605. While the court will **GRANT** plaintiff's motion for default judgment, the court believes that plaintiff's request for damages is grossly overstated and completely unsupported by case law in the Third Circuit. Therefore, the court will **ENTER JUDGMENT** in the amount of $3,800.

## BACKGROUND

This dispute began when defendants allegedly pirated a wrestling match and displayed it to a bar full of people in violation of federal law and despite plaintiff owning exclusive licensing rights to the program. On July 4, 2010, plaintiff's investigator Timothy Garvey visited Stone Elephant, a tavern in Olyphant, Pennsylvania, owned by defendant FJB3 Incorporated and

---

[1] An amount that is so grossly disproportionate to the alleged wrong and underlying circumstances that it has the effect of completely undercutting the credence of the plaintiff's arguments.

managed by defendants Frederick and Lorraine Becchetti. (Doc. No. 1, at 2-3; Doc. No. 11, Att. 3.) Mr. Garvey noted that there was no cover charge for admittance and that he purchased a bottle of beer for $2.75. (Doc. No. 11, Att. 3.) He observed four televisions in Stone Elephant, three of which had 28-32" screens and one of which had a 40" screen. (Doc. No. 11, Att. 3.) The small televisions were mounted in three corners of the bar while the large one was mounted "mid wall height." (Doc. No. 11, Att. 3.) Mr. Garvey noted that the televisions were showing an Ultimate Fighting Championship (UFC) match on a pay-per-view station. (Doc. No. 11, Att. 3.) Plaintiff, who has been granted exclusive distribution rights for the program, alleges that defendant did not purchase the rights to televise the program in Stone Elephant. (Doc. No. 1, at 5.)

After watching the match for several minutes, Mr. Garvey moved to another room where he conducted his first head count of the night. (Doc. No. 11, Att. 3.) In all, he counted forty-nine people, although the affidavit setting forth these facts does not clarify how he conducted the head count or whether it was conducted in all rooms of the bar. (Doc. No. 11, Att. 3.) After the match had ended, he again conducted a head count, this time counting thirty-eight people. (Doc. No. 11, Att. 3.) Mr. Garvey noted in his affidavit that the bar cleared out quite a bit after the match but provides no further information to support this claim apart from his head count. (Doc. No. 11, Att. 3.) Several minutes later, he took a third head count, this time coming up with thirty-five people. (Doc. No. 11, Att. 3.) Mr. Garvey estimated that the capacity of Stone Elephant was roughly ninety people, but he provides no evidence in support of this statement nor does he offer any information concerning how he reached that estimate. (Doc. No. 11, Att. 3.)

Plaintiff filed a complaint against Frederick Becchetti, Lorraine Becchetti, and FJB3 Incorporated on June, 28, 2012, alleging claims under 47 U.S.C. §553 and 47 U.S.C. §605. (Doc. No. 1.) Plaintiff also raised a state law conversion claim on the basis that defendants illegally obtained the program and used it for their own benefit. (Doc. No. 1, at 7-8.) Plaintiff received no response from defendants and, on November 16, 2012, filed a motion for entry of default with the clerk's office. (Doc. No. 8.) On April 12, 2013, plaintiff filed a motion for default judgment against all defendants, seeking damages in the amount of $111,100 under 47 U.S.C. §605 and state conversion law. (Doc. No. 11, Att. 2.) Plaintiff does not, however, seek default judgment under 47 U.S.C. §553, the other claim alleged in plaintiff's complaint.

## **DISCUSSION**

Plaintiff brings his claims under the Communications Act of 1934, (47 U.S.C. §605), and The Cable and Television Consumer Protection and Competition Act of 1992, (47 U.S.C. §553), both of which allow recovery of actual or, alternatively, statutory damages. (Doc. No. 1.) Plaintiff also brings a pendant claim for conversion, alleging that defendant converted its property by unlawfully intercepting and exhibiting the program to the public. (Doc. No. 1.) After receiving no responsive pleadings from defendant, plaintiff moved for default judgment, but only on the §605 and conversion claims.[2] (Doc. No. 11.)

---

[2]Sections 553 and 605 are mutually exclusive, so a party may not recover under both for a single act of piracy. TKR Cable Co. v. Cable City Corp. 267 F.3d 196, 207 (3d Cir. 2001) (finding provisions to be mutually exclusive); Joe Hand Promotions, Inc. v. Krist, 12-CV-1877, 2013 WL 3756439, *1 (W.D.Pa. July 15, 2013) ("When a defendant is liable under both §553 and §605, the aggrieved plaintiff may only recover damages under one of the sections but not both."); J&J Sports Productions, Inc. v. 4326 Kurz, Ltd. 07-CV-3850, 2008 WL 4630508, *3 (Oct. 17, 2008) ("the Third Circuit has

Specifically, plaintiff seeks default judgment in the amount of $111,100, an amount which encompasses both §605 damages and conversion damages.

As an initial matter, the court will **DENY** plaintiff's request for damages under a conversion theory of liability. Under Pennsylvania law, intangible property may only form the basis for a conversion claim if it has been merged with or is otherwise connected to a document. DirecTV v. Frick, 03-CV-6045, 2004 WL 438663, *2 (E.D.Pa. March 2, 2004). Satellite and cable signals are intangible property, and plaintiff has failed to argue that they are somehow connected to a document. Id. (dismissing conversion claim for pirated satellite broadcast because it's intangible property). Furthermore, several courts have refused to award conversion damages in conjunction with §605 claims because those damages "would not exceed those under §§553 and 605 and would result in double recovery." Kingsvision Pay-Per-View, LTD. v. Lardo, 10-CV-0059, 2010 WL 3463316, *5 (W.D.Pa. Sept. 1, 2010); see also Joe Hand Promotions, Inc. v. Hanaro Bethesda, Inc., 11-CV-191, 2012 WL 2366378, *7 (D.Md. June 20, 2012); Joe Hand Promotions v. Elmore, 11-CV-3761, 2013 WL 2352855, *10 (E.D.N.Y. May 29, 2013); Times Warner Cable of New York City v. Fland, 97-CV-7197, 1999 WL 1489144, *5 (S.D.N.Y. Dec. 3, 1999); J&J Sports Productions, Inc. v. Moody, 08-CV-1515749, 2009 WL 1515749, *2 (E.D.Pa. May 28, 2009). Therefore, the court will not award any damages for plaintiff's conversion claim.

Section 605 contains two statutory damage provisions which are relevant here, one which provides for damages of not less than $1,000 and not more than $10,000 and reads:

---

stated that plaintiffs may not recover under both §605 and §553 because they apply to different signal types").

> The party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just. 47 U.S.C. §605(e)(3)(C)(i)(II).

The second, commonly referred to as an enhanced damages provision, allows recovery up to $100,000 and states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section. 47 U.S.C. §605(e)(3)(C)(ii).

Plaintiff seeks a maximum award of statutory damages under both statutory provisions. (Doc. No. 11, Att. 4.) Although the court will **GRANT** plaintiff's motion for default judgment, the court will exercise its discretion to award appropriate damages in light of the specific facts of this case, notwithstanding plaintiff's request for a maximum award. 47 U.S.C. §605(e)(3)(C)(i)(II) (allowing damages "as the court considers just"); 47 U.S.C. §605(e)(3)(C)(ii) ("the court in its discretion may increase the award of damages"); J&J Sports Productions, Inc. v. Kraynak, 10-CV-2486, 2013 WL 228962, *3 (M.D.Pa. Jan. 22, 2013) (explaining that court has significant discretion in awarding damages).

### A.) Statutory Damages: §605(e)(3)(C)(i)(II)

The logical starting point for computing statutory damages is the amount of forgone revenue that plaintiff suffered as a result of defendants' piracy. J&J Sports Productions, Inc. v. Kraynak, 10-CV-2486, 2013 WL 228962, *4 (M.D.Pa. Jan. 22, 2013) (considering compensation of plaintiff as factor in computing statutory damages); Kingvision Pay-Per-View Ltd. v. Lardo, 10-CV-

5

0059, 2010 WL 3463316, *3 (W.D.Pa. Sept. 1, 2010) (considering compensation as a factor in computing damages); Kingvision Pay-Per-View Ltd. v. Jasper Grocery, 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001) ("While there needs to be some proportionality between the loss suffered and the amount of statutory damages, the calculation should be generous enough to ensure that the plaintiff is fully compensated").

In this case, plaintiff filed an affidavit setting forth a schedule of licensing fees that commercial venues are charged to purchase the program for public exhibition. (Doc. No. 13, Exh. 1.) The fee is based on the venue's maximum capacity, which presumably estimates the maximum amount of people that could view the program at that venue. (Doc. No. 13, at 3; Doc. No. 13, Exh. 1.) Plaintiff further alleges and submits an affidavit as proof that Stone Elephant has a maximum capacity of ninety people. (Doc. No. 11, Att. 1.) According to plaintiff's affidavit, a venue of this size could have purchased the program for $1,100. (Doc. No. 13, Exh. 1.)The court believes this amount is adequate to compensate plaintiff for defendants' violation of §605.

In addition to compensation, courts have recognized the role of §605 in deterring future piracy.[3] J&J Sports Productions, Inc. v. Kraynak, 10-CV-2486, 2013 WL 228962, *4 (M.D.Pa. Jan. 22, 2013) (awarding triple compensatory damages to deter future piracy); Joe Hand Promotions, Inc. v. Blarney Stone, 995 F.Supp. 577, 579 (E.D.Pa. 1998) (citing legislative history of §605); Joe Hand Promotions, Inc. v. Rennard Street Enterprises, Inc., 954 F.Supp. 1046, 1051 (E.D.Pa. 1997) ("To deter this unauthorized activity, Congress enacted

---

[3]The courts that have looked at §605's role as a deterrent have analyzed the issue under the main statutory damages provision, not the enhanced damages provision, which looks instead at whether the piracy was done willfully and for commercial advantage.

6

47 U.S.C. §553 and §605); J&J Sports Productions, Inc. v. Gallegos, 08-CV-201, 2008 WL 3193157, *4 (D.N.J. Aug. 5, 2008) ("Courts of this District and the Third Circuit have approved the award of statutory damages in excess of actual damages for the purpose of deterrence."). Plaintiff, however, requests that the court award maximum statutory damages, which, because the court will only award $1,100 as the compensatory component of damages, would make damages for deterrence $8,900. Plaintiff's request has absolutely no basis in law or fact and has failed to cite any case law in the Third Circuit indicating that such a large award is appropriate under these circumstances. In fact, plaintiff has failed to cite a single Third Circuit case throughout the entirety of its motion or brief in support, instead relying entirely on case law from other circuits.

In this circuit, courts have "acknowledged that when a large discrepancy exists between actual damages . . . and maximum statutory damages . . . an award of maximum statutory damages is not appropriate despite its deterrent effect." J&J Sports Productions, Inc. v. Kraynak, 10-CV-2486, 2013 WL 228962, *4 (M.D.Pa. Jan. 22, 2013); see also J&J Sports Productions, Inc. v. Edrington, 10-CV-3789, 2012 WL 525970, *3 (D.N.J. Feb. 16, 2012). At least one court has also noted that courts should be cautious in awarding damages under §605 so as to avoid "put[ting] a small business out of business." Kingvision Pay-Per-View, LTD. v. Lardo, 10-CV-0059, 2010 WL 3463316, *4 (W.D.Pa. Sept. 1, 2010). Therefore, the court will decline plaintiff's request to award maximum statutory damages. Nevertheless, the court believes that some additional damages are appropriate to deter this kind of behavior in the future, so the court will award plaintiff an additional $2,200 in damages.

**B.) Enhanced Statutory Damages: §605(e)(3)(C)(ii)**

In addition to basic statutory damages, plaintiff seeks enhanced damages in the amount of $100,000. (Doc. No. 11, Att. 1.) In order to award enhanced damages the court must find that defendants willfully pirated the program for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. §605(e)(3)(C)(i)(II). Section 605 is written in the conjunctive, so plaintiff must show that the conduct was both willful and for commercial advantage or private financial gain. As to the willful element, courts have generally found that the act of pirating itself sufficiently evidences intent because the viewer can only access the program by unscrambling an encrypted signal, something that is virtually impossible to do accidentally. Joe Hand Promotions, Inc. v. Waldron, 11-CV-849, 2013 WL 1007398, at *3 (D.N.J. March 13, 2013); Kingvision Pay-Per-View, LTD. v. Lardo, 10-CV-0059, 2010 WL 3463316, at *4 (W.D.Pa. Sept. 1, 2010); Garden City Boxing Club, Inc. v. Paquita's Café, Inc., 06-CV-6953, 2007 WL 2783190, at *5 (S.D.N.Y. Sept. 26, 2007); but see J&J Sports Productions, Inc. v. Daley, 06-CV-0238, 2007 WL 7135707, *6 (E.D.N.Y. Feb. 15, 2007) (refuting presumption of willful interception). According to one court, "[i]n order for [a person] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission." Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F.Supp. 107, 111 (E.D.N.Y. 1997). While it may be theoretically possible to accidentally access the television program at issue, it is highly unlikely, and defendants have relinquished their opportunity to rebut plaintiff's argument by failing to respond to the pleadings. Therefore, the court finds that defendants willfully accessed the program.

To determine whether defendants pirated the program for commercial advantage or financial gain, the court will assess the following five factors as originally articulated by the District of New Jersey: "the number of televisions broadcasting the event, the existence of a cover charge, sale of food or drink, advertisement of the event in the defendants' bar, and a demonstration that defendants made more money or conducted additional business by illegally broadcasting the event." J&J Sports Productions, Inc. v. Kraynak, 10-CV-2486, 2013 WL228962, at *5 (M.D.Pa. Jan. 22, 2013); J&J Sports Productions, Inc. v. Munguti, 06-CV-1282, 2007 WL 928479, *3 (D.N.J. March 27, 2007). It is worth noting, however, that these factors are not exhaustive nor, as far as the court can tell, should they necessarily be given equal weight.

Here, there were allegedly four televisions in Stone Elephant, one in each of three corners of the bar and one in the middle of the wall. (Doc. No. 11, Att. 4.) While there are no allegations that the establishment sold food, plaintiff's investigator, Timothy Garvey, noted that Stone Elephant sold alcohol and that he purchased a bottle of beer for $2.75. (Doc. No. 11, Att. 4.) Furthermore, there was no cover charge for visiting the bar on the night in question, and there are no allegations that defendants advertised the fight or promoted its exhibition in any way. (Doc. No. 11, Att. 4.) Finally, and perhaps most importantly, plaintiff has failed to provide any evidence or allegations that defendants profited from the program or conducted additional business because of it. (Doc. No. 11, Att. 4.) Plaintiff's investigator did state "[t]he bar cleared out quite a bit after that match was over," but the only support for this statement was his head counts, which totaled forty-nine patrons during the match and thirty-eight after the match. While this discrepancy is undoubtedly

relevant to the issue of enhanced damages, plaintiff has failed to convince the court that the results of the head counts are probative of anything other than the normal ebb and flow of customers at Stone Elephant. Therefore, the court will **DENY** plaintiff's request for enhanced damages.

### C.) Attorney's Fees

Plaintiff requests that the court award full costs and reasonable attorney's fees under 47 U.S.C. §605(e)(3)(B)(iii). That clause provides, "The court shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. §605(e)(3)(B)(iii). In this case, plaintiff has failed to provide the court with a calculation of attorney's fees. Additionally, the court's review of the defendant's pleadings and briefing indicate these filings appear to be pre-packaged documents adjusted to include the specifics of the relevant case. As such the court, in its discretion, will award $500 in attorney fees and costs.

### CONCLUSION

The court will **GRANT** plaintiff's motion for default judgment and will enter judgment in the amount of $3,800. Although plaintiff requests an award of maximum statutory damages in the amount of $111,100, the court will exercise its substantial discretion to award damages that more properly effectuate Congress's intent with regard to §605 of the Communications Act of 1934. The court believes that an award of $3,800 will suffice to compensate plaintiff for defendants' wrongdoing, deter future television signal piracy and cover realistic attorney's fees and costs.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE:** August 26, 2013

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-1242-01.wpd